In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-415 CR


____________________



ANTHONY LEE GARCIA, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 05-11-10218-CR






MEMORANDUM OPINION


 Appellant, Anthony Lee Garcia, challenges the legal and factual sufficiency of the
evidence supporting his conviction for murder. We affirm the judgment.

 A legal sufficiency review requires us to view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.
Crim. App. 2004). In reviewing the evidence for factual sufficiency, we ask "whether a
neutral review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine confidence in the jury's determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Watson v. State,
204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006).

 The events that culminated in the murder of Johnny Quintanilla began at a
Quinceañera. An inebriated guest felt insulted by someone who refused to shake his hand. 
Angry, the guest went out into the parking lot and kicked or hit Javier Blanco's vehicle. 
Appellant approached the guest and asked, "What are you doing to my home boy's truck?"
Appellant found Blanco, who engaged in a heated argument with the guest. Quintanilla
interrupted the argument and told both party-goers to leave. Blanco told Quintanilla, "I'm
going to get you, man. I got you." Perhaps half an hour later the festivities continued at the
family home of the celebrant. Quintanilla and three friends parked and were walking up to
the house when they saw Blanco's vehicle speed by and stop suddenly, almost hitting a
female party-goer who was crossing the street. Agitated, Quintanilla asked Blanco, "What's
your problem?" While standing at the rear passenger side of the vehicle, Quintanilla
exchanged heated words with Blanco, who was sitting in the driver's seat. Saying, "this guy
ain't going to do nothing," one of Quintanilla's friends suggested that they leave. The driver
turned around and the person sitting in the rear seat behind the driver raised a shotgun, stuck
it out of the rear passenger window, and discharged a shotgun blast into Quintanilla's chest,
killing him. According to Quintanilla's friend, the shot was fired by the person sitting in the
rear seat behind Blanco.

 One of the State's witnesses, Meliton Ramirez, testified that he was sitting in the front
seat on the passenger side and that appellant, who was sitting behind Blanco, fired the fatal
shot. Blanco drove away quickly. According to Ramirez, Blanco then drove to his
girlfriend's house and went inside for about fifteen minutes while the passengers waited in
the vehicle. Next, they drove to Ramirez's home. Ramirez observed either Blanco or
appellant walk to a wooded area behind his home. The following day Ramirez saw 
appellant's brother, Josh Garcia, carry out a blanket that appeared to be covering a gun. 
Ramirez testified that he initially lied to the police and claimed he did not know anything
about the murder, but later talked to the police after the prosecutor offered him immunity.

 In a search of the bedroom that appellant shared with his brother, law enforcement
officers recovered a box of Winchester ammunition containing six 20-gauge, two and three-quarter-inch yellow shotgun shells. The pellet size and wadding of the ammunition
recovered from appellant's bedroom matched that found in the body of the deceased.

 On appeal appellant notes that the only witness who identified him as the shooter
received immunity from prosecution. (1) According to appellant, Ramirez's testimony is
insufficient to support the verdict because no other testimony placed Ramirez in the vehicle
with appellant, and Ramirez's testimony that Blanco drove to his girlfriend's house after the
murder was refuted by the testimony of the girl and her mother. The girl denied being
Blanco's girlfriend and although she admitted that Blanco called her and she saw him after
the murder, she claimed that she did not see him at her house that night. Her mother testified
the girl was currently appellant's girlfriend. According to the mother, Blanco visited their
home regularly but did not do so on the night of the murder because the daughter stayed out
until 5:00 a.m.

 A conviction may be based on the testimony of a single eyewitness. Bowden v. State,
628 S.W.2d 782, 784 (Tex. Crim. App. 1982); Aguilar v. State, 468 S.W.2d 75, 77 (Tex.
Crim. App. 1971). The jury could determine the witnesses' credibility and decide what
weight to give their testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). 
Both the testimony of Ramirez, who claimed to have been a passenger in the vehicle, and that
of the witnesses who claimed Blanco did not go to their home after the murder were before
the jury. The jury heard defense counsel's arguments regarding the inconsistencies between
the witnesses's testimony and that of other eyewitnesses as well as the physical evidence. 
The jury also heard the crime scene investigator's testimony that the blood spatter pattern
was consistent with the victim being positioned within three and one-half feet of the vehicle, 
heard the medical examiner's testimony that the path of the wound moved from the front to
the back and somewhat from right to left, and heard Quintanilla's friend's testimony that
Quintanilla turned towards him when he was shot by the person sitting in the back, behind
the driver. Viewed in the light most favorable to the jury's verdict, the evidence shows that
Garcia killed Quintanilla. Viewed neutrally, the evidence establishing Garcia's identity as
the killer is neither so weak nor is the evidence supporting an inference that someone else
shot Quintanilla so overwhelming as to undermine our confidence that the jury rationally
determined Garcia's guilt. We hold that the evidence is legally and factually sufficient to
sustain Garcia's conviction for murder. We overrule issues one and two and affirm the
judgment of the trial court.

 AFFIRMED.


 ____________________________

 STEVE McKEITHEN

 Chief Justice

Submitted on October 25, 2007

Opinion Delivered December 12, 2007

Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.
1. The record does not reflect that Ramirez was charged with any crime, the trial court
was not asked and did not find that the witness was an accomplice as a matter of law, and the
trial court was not asked to and did not instruct the jury on the law pertaining to accomplice
as a matter of fact. Furthermore, Garcia does not cite or rely upon Article 38.14 or any case
authority analyzing Article 38.14 and does not argue that in the absence of a grant of
immunity Ramirez could have been charged with murder. See Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon 2005) ("A conviction cannot be had upon the testimony of an accomplice
unless corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the commission of the
offense."). Thus, accomplice witness corroboration is not an issue in this appeal.